**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Olivier Peyre,<br><br>    Petitioner,<br><br>v.<br><br>Catharine Bliss McGarey,<br><br>    Respondent. | No. CV-23-00350-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Mother's emergency motion to stay. (Doc. 49.) For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

Petitioner Charles Olivier Peyré ("Father") is a French citizen; Respondent Catharine Bliss McGarey ("Mother") is an American citizen. After meeting in 2017, Father and Mother moved to France, married, and had twins ("the Children"). On June 30, 2022, Mother flew to the United States with the Children while Father remained in France. (Doc. 45 at 1.) On February 27, 2023, Father initiated this action by filing a verified petition under the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*, requesting a court order requiring that the Children be returned to France. (Doc. 1.)

On May 30, 2023, after a five-day evidentiary hearing, the Court issued findings of fact and conclusions of law, holding that Father is entitled to relief under ICARA and ordering Mother to return the Children to France within 30 days of the order ("the Return Order"). (Doc. 45.)

On June 19, 2023, Mother filed a "Rule 52 and Rule 59 Motion to Alter or Amend Findings of Fact and Conclusions of Law, for a New Trial, and/or to Alter or Amend the Judgment" ("the Reconsideration Motion"), arguing that the Court "erred in its findings and conclusions" and requesting that the Court "vacate its Order and Judgment for Father and instead deny Father's Petition and enter judgment for Mother." (Doc. 48 at 1.) That same day, Mother also filed a motion to stay the Return Order (Doc. 49) and a motion to expedite resolution of the motion to stay (Doc. 50).

On June 20, 2023, the Court granted Mother's request for an expedited briefing schedule and set June 21, 2023 as the deadline for Father's response. (Doc. 51.)

On June 21, 2023, Father filed a response opposing the motion to stay. (Doc. 52.)

**DISCUSSION**

I. <u>The Parties' Arguments</u>

Mother requests that the deadline for return of the Children to France be "stayed and extended" until the Court rules on the Reconsideration Motion and further requests that the deadline "possibly [be stayed] for an additional 30 days to permit Mother to determine if she needs and/or wants to file an appeal." (Doc. 49 at 2.) First, Mother argues that "this Court erred in its analysis regarding Father's prima facie case because it treated this as a wrongful removal case and therefore used June 30, 2022, as the date to determine habitual residence" and that, "under the correct legal analysis" as to that and other issues, she should prevail. (*Id.* at 3.) Second, "Mother contends that in the absence of a stay irreparable harm will likely result if and when the Return Order is or may be vacated or reversed." (*Id.* at 4.) For one thing, "if returned to France, the children will not be able to attend Prince of Peace pre-school program," which they are scheduled to begin in August 2023.[1] Additionally, "Father has sworn out a criminal complaint in France against Mother, so if she has to go to France unnecessarily, she can be subject to potential arrest." (*Id.* at 5. *See*

---

[1] Mother's motion stated that "the children will not be able to attend Prince of Peace pre-school program once they turn three years of age in January" 2024 (Doc. 49 at 4); however, on June 21, 2023, Mother clarified that the Children are scheduled to begin the Prince of Peace program in August 2023 because they will turn three "during the academic year" (*i.e.*, in January 2024). (Doc. 53.)

- 2 -

*also id.* at 4 [emphasizing that "multiple relocations" may be damaging to young children].) Third, Mother argues that "[w]hile Father will understandably be disappointed with having to wait a little longer to have the children returned to France," "Mother is seeking a stay just to allow the briefing and decision" on the Reconsideration Motion and "perhaps for a short time for her to determine if an appeal is needed so a second motion to stay could be filed." (*Id.* at 5.) Fourth, Mother contends that "[t]he public interest is served by a stay as the public interest is served by returning the child only after a final decision (after any applicable appeal) regarding where the children should be." (*Id.*)

In response, as for Mother's likelihood of success of the merits, Father contends that Mother is trying to "retroactively frame this matter as a wrongful retention case, rather than the wrongful removal case that it is" and notes that this is the "first time" Mother has argued "that the Court was required to rest its decision on the residence of the children as of November 29, 2022 or January 2023." (Doc. 52 at 2.) As for irreparable harm, Father contends that "Mother has a French attorney representing her in the pending French divorce and has an initial appearance on July 6, 2023," at which "Mother can request temporary orders to allow the children to return to the United States in her primary care should she wish." (*Id.*) Moreover, Father argues that the Return Order "effectively requires the children be returned to France for the summer, exactly what Mother can anticipate as a best-case scenario in a French or Arizona family court." (*Id.* at 3.) Father also emphasizes the Children's young age and disputes Mother's assertions about the Children's preschool options and Mother's ability to spend time in France without a visa. (*Id.* at 3-4.) As for the harm a stay would impose on him, Father contends that "[t]he prolonged absence of Father from the children's lives has harmed both him and the children by altering the close relationship they enjoyed prior to their removal and weakening their ability to understand French. . . . Granting a stay will allow Mother to continue to deprive Father and the children of contact, causing the children to further lose their understanding of French and further weaken the bond with Father that they have just begun to reestablish during the eleven days Mother allowed Father to have the children in May." (*Id.* at 4.) Finally, as for the public

interest, Father argues that "there is no public interest in granting a stay and effectively allowing Mother to continue to withhold the children from Father and the home in which they were raised." (*Id.* at 5.)

II.     Analysis

The Court will grant Mother's stay request, but only as to the time needed to resolve the Reconsideration Motion.

"In every case under the Hague Convention, the well-being of a child is at stake." *Chafin v. Chafin*, 568 U.S. 165, 179 (2013). To "ensure[] that each case . . . receive[s] the individualized treatment necessary for appropriate consideration of the child's best interests," "[c]ourts . . . apply the four traditional stay factors in considering whether to stay a return order: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (internal quotation marks omitted).

Here, as for the first factor, although this case involves a complex set of facts, the Court does not find that there is a high likelihood of success on the Reconsideration Motion. Without prejudging the merits, it seems likely that Mother forfeited the argument that this is a wrongful retention case (instead of a wrongful removal case) by failing to properly raise it earlier in the litigation. Alternatively, even assuming that the retention did not become wrongful until some point after June 30, 2022, it is not clear how a summer vacation in Arizona could have transformed two-year-old children, both of whom resided exclusively in France before June 30, 2022, into habitual residents of the United States by the date the retention became wrongful.[2] Accordingly, the first factor weighs against a

---

[2] Indeed, in the May 30, 2023 order, the Court noted: "Although the Court appreciates and accepts that the Children have made good friends and become close to Mother's family since their removal to the United States in June 2022, the bottom line is that they are two-year-olds who have lived most of their lives in France. They have not become so acclimatized to living in the United States as to alter their habitual residence." (Doc. 45 at 28-29.)

stay.

As for the second factor, the Court agrees with Mother that, absent a stay, there is a risk of irreparable harm. Specifically, if Mother and the Children return to France on June 23, 2023, but the Court subsequently rules that the return order was erroneous, Father could potentially prevent the Children's re-return to the United States by withholding his consent for the Children's travel, such that the airline would not allow Mother to board a plane to the United States with the Children. (Doc. 45 at 17 [in anticipation of the June 30, 2022 trip, "Mother requested [a signed authorization from Father] because she believed the airline would require it before allowing her to board an international flight with the Children outside Father's presence"].) To be sure, the Court (and the French courts) may have tools in that scenario to attempt to require the Children's return, but due to the compressed briefing schedule the parties have not comprehensively briefed whether those tools would be effective. Accordingly, the second factor weighs in favor of a stay.

As for the third factor, although the Court is sympathetic Father's desire to see his Children, a short additional delay will not cause Father to suffer significant additional harm. The Children have been in the United States for nearly a year. Additionally, Father spent 11 days with the Children in May 2023 and asserts that, if and when the Children return to France, "Mother has told Father that she intends to keep the children with her in France and only allow him limited time." (Doc. 52 at 3 n.2, 4.) No doubt, Father has been eagerly anticipating the Children's return to France, and a delay will cause frustration and grief, which is regrettable—particularly because any delay could have been mitigated (if not avoided) had Mother filed the stay motion soon after the Court issued the Return Order. Nevertheless, the harm to Father is outweighed by the risk of irreparable harm to Mother in the absence of a stay. Furthermore, the Court does not intend for the delay to be so lengthy as to have any effect on the Children's acquisition of French language skills. Thus, there will be little to no harm to the Children, and a stay prevents the potential harm to the Children of two disruptive international moves in a very short period of time.

The fourth factor is also somewhat neutral due to the length of the stay. Although

the public has an interest in securing "the prompt return of the children wrongfully removed or retained in any Contracting State," *Colchester v. Lazaro*, 16 F.4th 712, 717 (9th Cir. 2021) (citation omitted), staying the Return Order until resolution of the Reconsideration Motion does not implicate the same sort of months-long delay that a stay pending appeal would involve. *Cf. Chafin*, 568 U.S. at 178 (suggesting that a stay may not be appropriate where "the appeal ha[s] little chance of success" and the stay would cause "a child . . . [to] lose precious months when she could have been readjusting to life in her country of habitual residence"). *See also Royal Borough of Kensington & Chelsea v. Bafna-Louis*, 2023 WL 3976663, *2 (S.D.N.Y. 2023) (in the context of the second stay factor, distinguishing between a "brief" stay of a return order—*i.e.*, "two weeks to one month"—and a two-month stay).

On balance, the Court concludes that it should grant Mother's request for a stay while her Reconsideration Motion is pending. *See also id.* ("[C]ourts can achieve the ends of the Convention and ICARA—and protect the well-being of the affected children— through the familiar judicial tools of expediting proceedings and granting stays where appropriate."). Although, as stated earlier, the Court is not persuaded at this juncture that the Reconsideration Motion is likely to succeed—in which case the issuance of this stay may simply delay the inevitable—this case is deeply important to the parties and the Court concludes that it is prudent to err on the side of caution. However, the Court will not extend the stay for the purpose of Mother determining whether to appeal in the event the Reconsideration Motion is denied. Mother should be prepared to return the Children to France soon after the Court's resolution of the Reconsideration Motion if the Motion is not resolved in her favor. Furthermore, the Court having already undertaken the stay analysis, it is clear that the factors come out in Mother's favor only because the stay will be so short. Thus, the Court will not stay the Return Order should Mother choose to appeal it, as an appeal would take much more time and the analysis would tip strongly in Father's favor.

…

…

Accordingly,

**IT IS ORDERED** that Mother's motion for an emergency stay (Doc. 49) is **granted in part and denied in part**, as discussed herein.

**IT IS FURTHER ORDERED** that the Return Order (Doc. 45) is **stayed** pending the resolution of Mother's Reconsideration Motion (Doc. 48), which the Court intends to resolve promptly once it becomes fully briefed.

**IT IS FURTHER ORDERED** setting an expedited briefing schedule for the Reconsideration Motion as follows. Father shall file a response to the Reconsideration Motion by **June 26, 2023**. Mother shall file any reply by **June 28, 2023**.

Dated this 22nd day of June, 2023.

Dominic W. Lanza
United States District Judge